UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ANGEL MATURINO RESENDIZ, | § | |
| Petitioner, | § | |
| | § | |
| VS. | § | CIVIL CASE NO. 05-1604 |
| | § | |
| DOUGLAS DRETKE, | § | |
| Director, Texas Department of | § | |
| Criminal Justice, Correctional | § | |
| Institutions Division, | § | |
| Respondent. | § | |

**MEMORANDUM AND ORDER**

Angel Maturino Resendiz has filed a federal petition for a writ of habeas corpus. (Docket Entry No. 1). Resendiz's single habeas claim is that federal law, particularly *Apprendi v. New Jersey*, 120 S. Ct. 2348 (2000), required the prosecution to disprove beyond a reasonable doubt the absence of circumstances mitigating against a death sentence. Resendiz contends that the prosecution's failure to meet that burden invalidates his death sentence. Respondent seeks summary judgment. (Docket Entry No. 3). Resendiz has not responded to the pending summary judgment motion.

Federal consideration of Resendiz's petition does not require an extensive discussion of the facts behind his conviction and sentence. A jury found Resendiz guilty of capital murder. During the punishment phase of trial, the prosecution presented evidence that Resendiz killed at least eight other people and committed other violent acts. The jury answered the Texas special issue questions in a manner requiring the imposition of a death sentence. Resendiz unsuccessfully challenged his conviction and sentence on direct appeal

and state habeas review.

The Court of Criminal Appeals rejected Resendiz's *Apprendi* claim on direct review. *Resendiz v. State*, 112 S.W.3d 541, 549-50 (Tex. Crim. App. 2003). The Antiterrorism and Effective Death Penalty Act's ("AEDPA") deferential standard of review requires this court to deny habeas relief unless Resendiz shows that the Court of Criminal Appeals' resolution of his *Apprendi* claim was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

In *Apprendi*, the Supreme Court found that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 120 S. Ct. at 2362-63. Resendiz argues that *Apprendi* applies to the Texas mitigation special issue, which asks the jury whether, "taking into consideration all of the evidence, including the circumstances of the offense, the defendant's character and background, and the personal moral culpability of the defendant, there is a sufficient mitigating circumstance or circumstances to warrant that the sentence of life imprisonment rather than a death sentence be imposed." TEX. CODE CRIM. PRO. art. 37.071 § 3(e). Resendiz reads *Apprendi* to require that the prosecution prove, beyond a reasonable doubt, that no significant mitigating circumstances exist.

A capital sentencing scheme contains two distinct elements: "the eligibility decision and the selection decision." *Tuilaepa v. California*, 114 S. Ct. 2630, 2634 (1994). "To

2

render a defendant eligible for the death penalty in a homicide case, [the Supreme Court has] indicated that the trier of fact must convict the defendant of murder and find one 'aggravating circumstance' (or its equivalent) at either the guilt or penalty phase." *Id.*; *see also Gregg v. Georgia*, 96 S. Ct. 2909, 2941 (1976) (joint opinion of Stewart, Powell, and Stevens, JJ.). A capital sentencing scheme that, using aggravating circumstances, must "circumscribe the class of persons eligible for the death penalty." *Zant v. Stephens*, 103 S. Ct. 2733, 2743 (1988). The guilt/innocence phase of a Texas capital trial narrows the class of death-eligible defendants, as required by the Constitution. *See Woods v. Johnson*, 75 F.3d 1017, 1033-34 (5th Cir.), *cert. denied*, 117 S. Ct. 150 (1996); *James v. Collins*, 987 F.2d 1116, 1119 (5th Cir.), *cert. denied*, 114 S. Ct. 30 (1993). Under the statute, the jury determines in the guilt/innocence phase of trial whether the defendant committed a murder under one of several narrowly defined circumstances. *See* TEX. PENAL CODE § 19.03. Once a jury returns a verdict in that phase, the defendant has been convicted of a capital felony; that is, he is eligible for a death sentence. *See* TEX. PENAL CODE § 19.03(b); *Morris v. State*, 940 S.W.2d 610, 616 (Tex. Crim. App. 1996) ("To be eligible for the death penalty, the defendant must be convicted of a crime for which the death penalty is a proportionate punishment."), *cert. denied*, 117 S. Ct. 2461 (1997); *McFarland v. State*, 928 S.W.2d 482, 520 (Tex. Crim. App. 1996) ("To be 'eligible' for the death penalty, it is required that the trier of fact be able to convict the defendant of murder and find one 'aggravating circumstance' (or its equivalent) at either the guilt or penalty phase. In Texas, the aggravating factor is contained in the definition of the crime and in our requirement at punishment that the jury find the defendant

to be a continuing threat to society."), *cert. denied*, 117 S. Ct. 966 (1997).

The penalty phase of a capital murder trial serves as the "selection" portion of the proceedings. *See* TEX. CODE CRIM. PRO. art. 37.071(a)(1) ("If a defendant is tried for a capital offense in which the state seeks the death penalty, on a finding that the defendant is guilty of a capital offense, the court shall conduct a separate sentencing proceeding to determine whether the defendant shall be sentenced to death or life imprisonment."). "[I]n order to meet the requirement of the Eighth and Fourteenth Amendments, a capital-sentencing system must allow the sentencing authority to consider mitigating circumstances." *Jurek v. Texas*, 96 S. Ct. 2950, 2956 (1976) (plurality opinion); *see also Woodson v. North Carolina*, 96 S. Ct. 2978, 2991 (1976). Generally, "States may adopt capital sentencing processes that rely upon the jury, in its sound judgment, to exercise wide discretion." *Tuilaepa*, 114 S. Ct. at 2636; *see also Jones v. United States*, 119 S. Ct. 2090, 2108 (1999).

In response to the Supreme Court's concern over the breadth of its capital sentencing statute, Texas adopted its special issue interrogatory focusing on the existence of mitigating evidence. *See* TEX. CODE. CRIM. PRO. 37.071(e)(1). Texas law does not explicitly specify which party bears the burden of proof on the mitigation special issue. "No burden of proof exists for either the state or the defendant to disprove or prove the mitigating evidence. Thus, each juror individually and subjectively determines what evidence, if any, is sufficient to mitigate against the imposition of the death penalty." *Woods v. Cockrell*, 307 F.3d 353, 359 (5th Cir. 2002). Nevertheless, the mitigation special issue *implicitly*, and logically, allocates

4

a burden to the defendant to *produce* mitigating evidence and to convince the jury of its significance. *See Lawton v. State*, 913 S.W.2d 542, 557 (Tex. Crim. App. 1995) ("[T]he burden is implicitly placed upon [the defendant] to produce and persuade the jury that circumstances exist which mitigate against the imposition of death in his case."), *cert. denied*, 117 S. Ct. 826 (1996).

Resendiz argues that the Constitution and the *Apprendi* line of cases require the prosecution, rather than the defense, to shoulder the burden of persuasion. *Apprendi* holds that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury[.]" *Apprendi*, 120 S. Ct. at 2362-63; *see also Ring v. Arizona*, 122 S. Ct. 2428, 2439 (2002) (extending *Apprendi* to capital cases and holding that, "[i]f a state makes an increase in a defendant's authorized punishment contingent on finding a fact, that fact – no matter how the state labels it – must be found by a jury beyond a reasonable doubt."). Resendiz argues that, because a jury's failure to answer the special issues or the jury's negative answer to the mitigation issue results in an automatic life sentence, *see* TEX. CODE CRIM. PRO. art. 37.071(2)(g), the mitigation special issue authorizes a death sentence. As a result, "unanimous pro-death answer to [Texas's special issues] are necessary and part of the process of obtaining a higher punishment, which fits the *Apprendi* requirement that they be an 'issue upon which a factual determination raises the maximum punishment which is available.'" (Docket Entry No. 1 at 22). Resendiz advocates a capital sentencing procedure where,

> [t]o the extent that the defense would benefit by an answer to the mitigation

5

>    issue, it is incumbent upon the defense to produce some evidence of the existence of mitigating factors or circumstances. However, once the defense has satisfactorily produced some mitigating evidence on the issue, . . . the prosecution should bear the burden of persuading the jury that there is no mitigating evidence sufficient to warrant leniency.

(Docket Entry No. 1 at 22-23)

Resendiz's argument is not a logical extension of *Apprendi*. Resendiz improperly emphasizes the indispensability of a fact-finding over the effect of that fact-finding. True, *Apprendi* requires a jury to decide, beyond a reasonable doubt, any fact that increases a defendant's punishment. Before a jury considers the mitigation special issue, the jury has already found an aggravating factor beyond a reasonable doubt in the eligibility portion of trial (and a second aggravating factor through the future dangerousness inquiry), thus authorizing a capital sentence.[1] The maximum punishment available then is death. The factual issues involved in answering the mitigation special issue do not *increase* an inmate's *authorized* punishment; a 'no' answer to the mitigation issue merely actualizes the imposition of that punishment.[2] The absence of mitigating evidence could not be "the functional

---

[1] By way of contrast, the Arizona capital sentencing scheme rejected by the Supreme Court in *Ring* required a judge to find an aggravating factor in the punishment phase. *See Ring*, 122 S. Ct. at 2437.

[2] As noted by the Court of Criminal Appeals in another case,

>    a jury's finding on mitigation occurs only after the State has proven the elements of capital murder, at the guilt stage, and the aggravating circumstances – evidence of the defendant's future dangerousness – beyond a reasonable doubt. By the time the jury reaches the mitigation issue, the State has already demonstrated the defendant's eligibility for a death sentence; a negative answer on mitigation

(continued...)

equivalent of an element of capital murder that the state must prove beyond a reasonable doubt" as required by *Apprendi*. *United States v. Webster*, 392 F.3d 787, 792 (5th Cir. 2004); *see also In re Johnson*, 334 F.3d 403, 405 (5th Cir. 2003) (finding that the absence of mental retardation, akin to mitigating evidence, is not "the functional equivalent of an element of capital murder which the state must prove beyond a reasonable doubt"). The fact that the jury could answer the mitigation issue in a manner that lessens a capital defendant's sentence to life imprisonment hardly detracts from the statutory maximum that the jury could already allow before reaching that issue.[3]

*Apprendi* jurisprudence skirts any application to mitigating evidence. Federal law has long recognized "the distinction . . . between facts in aggravation of punishment and facts in

---

[2] (...continued)
    cannot increase his authorized punishment.

*Blue v. State*, 125 S.W.3d 491, 501 (Tex. Crim. App. 2003), *cert. denied*, 125 S. Ct. 297 (2004).

On direct appeal from Resendiz's conviction and sentence, the Court of Criminal Appeals observed that "[a] positive jury finding on the mitigation issue does not have the potential of increasing the penalty; rather, it has the potential to reduce a defendant's sentence." *Resendiz*, 112 S.W.2d at 550.

[3] Respondent summarizes the difficulty in applying *Apprendi* to Texas's capital sentencing scheme as follows:

> Although it is correct that a Texas capital sentencing jury must specifically answer the disputed issue in the negative to render a death sentence, the function of that special issue us plainly meant to inure to the defendant's benefit by allowing the jury a mechanism to give effect to the defendant's mitigating evidence.

(Docket Entry No. 3 at 15).

mitigation." *Apprendi*, 120 S. Ct. at 2363, n.16; *see also Ring*, 122 S. Ct. at 2437, n.4 (noting that the defendant in that case made "no Sixth Amendment claim with respect to mitigating circumstances"); *United States v. De Jesus-Batres*, 410 F.3d 154, 163 n.2 (5th Cir. 2005) (finding that *United States v. Booker*, 125 S. Ct. 738 (2005), which extended Apprendi to the Federal Sentencing Guidelines, "appl[ies] only to the sentencing adjustments based on judge-found facts which increase a defendant's sentence, not to mitigating adjustments"); *Rowell v. Dretke*, 398 F.3d 370, 378 (5th Cir. 2005) ("[T]he Supreme Court recognizes an important distinction between facts in aggravation of punishment and facts in mitigation."); *United States v. Fazal-Ur-Raheman-Fazal*, 355 F.3d 40, 52 (1st Cir.) ("If a fact decreases the maximum penalty, it is a mitigating factor that may be decided by the court."), *cert. denied*, 125 S. Ct. 173 (2004); *United States v. Hamlin*, 319 F.3d 666, 671 (4th Cir. 2003) ("The Supreme Court in *Apprendi* recognized that the existence of possible facts in mitigation does not affect the statutory maximum."); *United States v. Outen*, 286 F.3d 622, 638 (2d Cir. 2002) ("*Apprendi*, however, specifically noted and reaffirmed the distinction between 'facts in aggravation of punishment and facts in mitigation.'"). With respect to the consideration of mitigating evidence, Supreme Court authority anticipates that "[s]o long as a State's method of allocating the burdens of proof does not lessen the State's burden to prove . . . the existence of aggravating circumstances, a defendant's constitutional rights are not violated by placing on him the burden of proving mitigating circumstances sufficiently substantial to

call for leniency." *Walton v. Arizona*, 110 S. Ct. 3047, 3055 (1990).[4]

"*Apprendi* stated that 'any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.' The converse proposition, however, is equally true: any fact that *decreases* the penalty for a crime need not be so treated." *Outen*, 286 F.3d at 638 (quoting *Apprendi*, 120 S. Ct. at 2362-63); *see also United States v. Campbell*, 317 F.3d 597, 603 (6th Cir. 2003) (following *Outen*). Texas's treatment of mitigating evidence does not run afoul of *Apprendi* because "[c]ore concerns animating the . . . burden-of-proof requirements are . . . absent from a [mitigating] scheme." *Apprendi*, 120 S. Ct. at 2363, n.16; *see also Outen*, 286 F.3d at 638. Mitigating evidence "neither expos[es] the defendant to a deprivation of liberty greater than that authorized by the verdict according to statute, nor . . . impos[es] upon the defendant a greater stigma than that accompanying the jury verdict alone." *Apprendi*, 120 S. Ct. at 2363, n.16.

Texas's expectation that the defense will present mitigating evidence in the selection

---

[4] The Supreme Court's recent *Ring* case reversed *Walton*'s holding that "the Sixth Amendment does not require that the specific findings authorizing the imposition of the sentence of death be made by the jury.'" *Ring*, 122 S. Ct. at 2437 (quoting *Walton*, 110 S. Ct. at 3054). The Supreme Court, however, avoided overruling *Walton*'s treatment of mitigating evidence. *See Ring*, 122 S. Ct. at 2443 ("[W]e overrule *Walton* to the extent that it allows a sentencing judge, sitting without a jury, to find an aggravating circumstance necessary for imposition of the death penalty."); *Rowell*, 398 F.3d at 378 ("[T]he Supreme Court underscored that Ring had made no Sixth Amendment claim with respect to mitigating circumstances."); *United States v. Bernard*, 299 F.3d 467, 484 n.14 (5th Cir. 2002) ("*Ring* explicitly states, however, that the Court was not considering the state supreme court's authority to reweigh the aggravating and mitigating circumstances after it struck an aggravating factor."), *cert. denied*, 123 S. Ct. 2572 (2003).

portion of its capital murder trials without assigning a specific burden of proof to the mitigating special issue does not offend the Constitution. As "[n]o Supreme Court or Circuit precedent constitutionally requires that Texas's mitigating special issue be assigned a burden of proof[,]" this court could only rule otherwise by creating a new rule of constitutional law in violation of *Teague v. Lane*, 109 S. Ct. 1060 (1989). *Rowell*, 398 F.3d at 378; *see also Schiro v. Summerlin*, 124 S. Ct. 2519, 2526 (2004) ("[I]t does not follow that, when a criminal defendant has had a full trial and one round of appeals in which the State faithfully applied the Constitution as we understood it at the time, he may nevertheless continue to litigate his claims indefinitely in hopes that we will one day have a change of heart.").[5] The Court of Criminal Appeals' rejection of Resendiz's *Apprendi* claim was not contrary to, or an unreasonable application of, federal law. *See* 28 U.S.C. § 2254(d)(1). This Court will deny habeas relief.

The AEDPA prevents appellate review of a habeas petition unless the district or circuit courts certify specific issues for appeal. *See* 28 U.S.C. § 2253(c); FED. R. APP. PRO. Rule 22(b). Resendiz has not yet requested that this Court grant him a Certificate of Appealability ("COA"), though this Court can consider the issue *sua sponte*. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000). Under the AEDPA, a prisoner cannot seek appellate review from a district court's adverse judgment until a court certifies issues for

---

[5] The Fifth Circuit has repeatedly rejected similar *Apprendi* claims in unpublished cases. *See Reese v. Dretke*, 99 Fed. Appx. 503, 505 (5th Cir.), *cert. denied*, 125 S. Ct. 368 (2004); *McWilliams v. Cockrell*, 74 Fed. Appx. 345, 349 (5th Cir. 2003), *cert. denied*, 124 S. Ct. 1513 (2004); *Lewis v. Cockrell*, 58 Fed. Appx. 596 (5th Cir.), *cert. denied*, 124 S. Ct. 108 (2003).

appellate consideration.  *See* 28 U.S.C. § 2253(c).  A court may only issue a COA when "the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).[6]  Clear, binding precedent forecloses relief on Resendiz's claim.  This Court will not certify any issue for review by the Fifth Circuit.

Resendiz fails to show entitlement to federal habeas relief.  Accordingly, this Court **GRANTS** Respondent's motion for summary judgment and **DENIES** Resendiz's petition for a writ of habeas corpus.  This Court will not issue a Certificate of Appealability.  By separate order, this case is dismissed.

SIGNED on September 7, 2005, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge

---

[6] The Supreme Court has explained the standard for evaluating the propriety of granting a COA on claims reject on their merits as follows: "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy §§2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 120 S. Ct. 1595, 1604 (2000); *Miller-El v. Dretke*, 123 S. Ct. 1029, 1039 (2003).